***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS, with modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Employee is Zellon Ward.
2. Employer is CMI Contracting, Inc.
3. The carrier on the risk is Selective Insurance.
4. An employee-employer relationship existed at all relevant times.
5. Defendant-employer regularly employs three or more employees and all parties are bound by the North Carolina Workers' Compensation Act.
6. The date of the injury is April 9, 2002.
7. Plaintiff's average weekly wage is $624.00, yielding a weekly compensation rate of $416.02 as stated on the Form 60 dated April 19, 2002. Plaintiff received temporary total disability benefits from April 17, 2002, until November 12, 2003.
8. The parties stipulated plaintiff's medical records into evidence as Stipulated Exhibit 1.
8. The parties stipulated Industrial Commission forms into evidence as Stipulated Exhibit 2.
 *********** EVIDENTIARY RULINGS
Defendants' Motion to the Full Commission to Receive Additional Medical Evidence is hereby granted.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old. Plaintiff's job with defendant-employer was to operate heavy, earth moving equipment. In order to get into the operator's seat of the equipment, plaintiff had to climb up pulling with his arms. Plaintiff is five feet, five inches tall and on April 9, 2002, weighed approximately 281 pounds.
2. On April 9, 2002, plaintiff sustained a right shoulder injury when equipment he was operating turned over. On an Industrial Commission Form 60, dated April 19, 2002, defendants accepted plaintiff's claim as compensable.
3. As a result of his compensable injury, plaintiff presented to Dr. Donald H. McQueen, III, an orthopedic surgeon at Carolina Orthopaedic Surgery Associates in Rock Hill, South Carolina. When Dr. McQueen saw plaintiff on April 26, 2002, plaintiff had undergone a MRI of the right shoulder, which revealed a full thickness tear of the supraspinatus tendon.
4. On May 15, 2002, Dr. McQueen performed a rotator cuff repair and continued to treat plaintiff by ordering physical therapy from June 3, 2002, through November 13, 2002.
5. On October 4, 2002, Dr. McQueen noted that plaintiff was having poor external rotation. Dr. McQueen injected the subacromial space with Marcaine, Xylocaine and Depo-Medrol and continued plaintiff's physical therapy.
6. The following month, Dr. McQueen noted that the rehabilitation nurse assigned to assist plaintiff wanted "a second opinion" even though plaintiff had not reached maximum medical improvement according to Dr. McQueen. Thereafter, the rehabilitation nurse transferred treatment of plaintiff from Dr. McQueen to Dr. Robert Humble, an orthopedic specialist at Oweida Orthopaedic Associates.
7. On November 18, 2002, plaintiff presented to Dr. Humble, who recommended a diagnostic arthroscopy and labral stabilization and a possible repair of a Bankart lesion. On December 27, 2002, Dr. Humble performed an arthroscopic repair of a SLAP lesion on plaintiff's right shoulder.
8. Following his surgery by Dr. Humble, plaintiff continued to complain of pain and lack of mobility in his right arm. When Dr. Humble last saw plaintiff on June 30, 2003, due to plaintiff's continuing problems with his right shoulder, pain and lack of mobility, Dr. Humble suggested a diagnostic arthroscopy.
9. Over the course of treatment, the relationship between plaintiff and Dr. Humble became strained and plaintiff was allowed to return to Carolina Orthopaedic Surgery Associates in Rock Hill, South Carolina. On August 1, 2003, he saw Dr. E. Neal Powell, an orthopedic specialist at Carolina Orthopaedic Surgery Associates. Dr. Powell noted that plaintiff lacked full abduction and external rotation and that he had pain with the O'Brien's test. Dr. Powell recommended an arthrogram of the right shoulder, the same diagnostic test Dr. Humble had recommended. The arthrogram was conducted on September 23, 2003, and indicated a number of continuing problems as well as some thinning (a partial tear) of the rotator cuff.
10. On June 17, 2003, defendant-employer made a written offer of employment to plaintiff for a position that appeared to fall within the restrictions placed by Dr. Humble. The position was to perform traffic control at the Oakboro Water System Improvement project in Oakboro, North Carolina. The Oakboro job was approximately 90 miles from plaintiff's residence in York, South Carolina. This position paid $9.00 per hour instead of the $13.00 per hour plaintiff was previously earning as an equipment operator.
11. On June 25, 2004, plaintiff's family physician, Dr. Jerry J. Sample, wrote to defendant-employer opining that plaintiff had health conditions, unrelated to his work-related injury, which would prevent him from performing the position of traffic controller.
12. Plaintiff does not have a driver's license and depended upon his brother, who also worked for defendant-employer, to take him to the work site. Plaintiff's brother drove a truck owned by defendant-employer. Defendant-employer was aware of this arrangement and that plaintiff had no means of transportation to the Oakboro site since his brother did not work there.
13. Plaintiff did not attempt to perform the position of traffic controller based on Dr. Sample's medical opinion and because he did not have transportation to the Oakboro worksite.
14. Subsequently, defendants filed a Form 24 application to terminate benefits, which the Industrial Commission approved on January 29, 2004. Defendants were authorized to suspend weekly compensation payments from November 12, 2003, the date on which the Form 24 Application was filed. This approval was based on a finding that Dr. Robert Humble had released plaintiff at maximum medical improvement on June 9, 2003, with the following restrictions: no raising the right arm overhead for more than 30 second intervals with no more than ten pounds for a maximum of five times per hour; lifting only to the waist as tolerated; only lifting up to 20 pounds waist to chest and up to ten pounds above the chest occasionally; only carrying up to 30 pounds for up to 50 feet; pushing/pulling up to 40 pounds occasionally and only occasionally climbing and crawling.
14. As of May 10, 2004, Dr. Powell opined that there were some significant changes in plaintiff's condition, that plaintiff was not at maximum medical improvement and that an orthopedic surgeon with a sub-specialty in the shoulder should see plaintiff in light of the complex nature of his shoulder problems. Dr. Powell specifically recommended Dr. Perry or Dr. Barron, Charlotte orthopedic surgeons specializing in shoulder problems.
15. The Full Commission gives greater weight to the opinion of Dr. Powell than that of Dr. Humble as Dr. Powell has examined plaintiff more recently and his opinion is based on the most recent MRI arthrogram, conducted on September 23, 2003. This arthrogram indicated a number of continuing problems including some thinning, or a partial tear, of the rotator cuff.
16. The greater weight of the evidence indicates and the Full Commission finds that plaintiff has not reached maximum medical improvement and is in need of further treatment.
17. The Full Commission finds that defendants have not offered plaintiff work that is suitable and that plaintiff was justified in refusing the traffic controller position.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission finds the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff on April 9, 2002, plaintiff sustained an injury by accident to his right shoulder arising out of and in the course of his employment. N.C. Gen. Stat. §97-2(6).
2. Plaintiff did not unjustifiably refuse suitable employment such that his benefits should be suspended. N.C. Gen. Stat. § 97-32.
3. As a direct and proximate result of plaintiff's compensable injury to his right shoulder, plaintiff is entitled to temporary total disability compensation at the rate of $416.02 per week from November 12, 2003, until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29. Compensation due that has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
4. As a result of plaintiff's compensable injury by accident, the plaintiff is entitled to have the defendants pay for all medical expenses for treatment of plaintiff's right shoulder injury sustained in the accident on April 9, 2002, including treatment by Dr. E. Neal Powell and an evaluation by Dr. Perry or Dr. Barron for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for his temporary total disability at the rate of $416.02 per week beginning November 12, 2002, and continuing until further order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for treatment of his right shoulder, including further evaluation recommended by Dr. Powell, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due under Paragraph 1 of this Award is hereby approved and shall be deducted by defendants from compensation that has accrued and paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel is to receive every fourth check.
4. Defendants shall pay the costs.
This the ___ day of _____________ 2005.
 S/_________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_________________ THOMAS J. BOLCH COMMISSIONER
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER